(No. 34948.—)

PEARCE HOSPITAL FOUNDATION *et al.,* Appellees, *vs.* ILLINOIS PUBLIC AID COMMISSION *et al.,* Appellants.

*Opinion filed December 16, 1958.*

LATHAM CASTLE, Attorney General, of Springfield, WILLIAM C. WINES, THEODORE G. MAHERAS, and RAYMOND S. SARNOW, of counsel,) for appellants.

SIMON STICKGOLD, and JOSEPH J. McGOVERN, both of Chicago, for appellees.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

This appeal involves two cases, consolidated below and disposed of by a single judgment, wherein appellees, Dr. Lee J. Pearce, and Pearce Hospital Foundation, a corporation, filed complaints in the superior court of Cook County for judicial review of an administrative decision of the Illinois Public Aid Commission. Judgment was entered for appellees when the commission elected to abide by unsuccessful motions to strike and dismiss the actions and this direct appeal, involving financial interests of the State, has been prosecuted by the commission. The principal question presented is whether appellees' actions are barred by section 4 of the Administrative Review Act, (Ill. Rev. Stat. 1957, chap. 110, par. 267,) which requires that proceedings under the act be instituted "within thirty five days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby."

The administrative record is not before us; however, facts appearing in the pleadings and exhibits filed in the review action establish that for some time prior to June 2, 1956, Dr. Pearce was the owner of a hospital located in

Saline County, and that both the doctor and his hospital appeared on the lists of physicians and hospitals permitted to participate in the commission's medical aid program. On the date named Dr. Pearce appeared before the commission's medical advisory committee and, as the result of such inquiry, was subsequently advised that his hospital's admission rate and length of hospitalization for recipients of public aid was above average, that he should comply with county and State averages in such respects, and that he should present a report of his admissions in six months. By a letter dated April 26, 1957, the commission referred to the foregoing facts and informed Pearce that the advisory committee had reviewed his report for the period of July 1, 1956, to December 31, 1956, that such committee was of the opinion no effort had been made to reduce either the number of admissions or length of hospitalization for public aid recipients, and that it was the committee's recommendation that the doctor and his hospital be dropped from the rolls of the medical aid program. Concluding, the commission's letter advised Pearce that bills rendered by the hospital or himself would not be accepted for payment effective May 15, 1957, and stated that arrangements were being made to transfer the care of public aid patients affected to other physicians and hospitals. Pearce in the meantime, on March 19, 1957, had sold his hospital to the corporate appellee for the sum of $239,995. While we are not informed as to whether the corporation automatically succeeded to the position of its predecessor on the rolls of the medical aid program, it is clear from the record that the new owner could enjoy no greater rights in such respect than did its vendor.

Approximately seven months later, on December 9, 1957, the corporate appellee addressed a letter to the commission demanding a hearing. It does not appear that Dr. Pearce made a similar request but, in any event, both Pearce and the hospital corporation appeared before the commis-

sion on January 8, 1958, at which time each petitioned for retroactive restoration to the medical aid program and was permitted to make a statement. The latter petitions were denied by the commission on February 7, 1958, its order also affirming its decision contained in the letter of April 26, 1957, and notice of such action was received by appellees on or about February 17. Thereafter, and within a period of 30 days, appellees filed separate complaints for administrative review, being the remedy afforded them by section 8—16 of the Public Assistance Code. (Ill. Rev. Stat. 1957, chap. 23, par. 816.) While both were purportedly taken from and sought reversal of the order of February 7, 1958, the specific relief prayed for in each complaint was that the order of April 26, 1957, be stayed, and that the commission be required to restore appellees to the aid program retroactive to May 15, 1957, the cut-off date fixed by the order of April 26. Additionally, the corporation's complaint prayed that the commission be ordered to pay it all bills for hospital services rendered to public aid recipients from May 15, 1957, to the date of the complaint.

The commission did not answer the complaints but, as permitted under section 14 of the Administrative Review Act, filed motions to strike and dismiss. (Ill. Rev. Stat. 1957, chap. 110, par. 277; *Winston* v. *Zoning Board of Appeals,* 407 Ill. 588.) Alleged as principal grounds were, first, that the retroactive relief sought was not available in a proceeding under the review act and, second, that the actions were barred under section 4 of the act, (Ill. Rev. Stat. 1957, chap. 110, par. 267,) inasmuch as the complaints disclosed on their face that the final order of the commission sought to be reviewed was on or before April 26, 1957. Although the court below denied the motions, it is our opinion that either of the principal grounds advanced was sufficient to sustain them.

Section 1 of the Administrative Review Act defines an administrative decision as follows: " 'Administrative deci-

sion' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties *and which terminates the proceedings before the administrative agency.*" (Ill. Rev. Stat. 1957, chap. 110, par. 264, emphasis supplied.) Section 2, in turn, provides that the act "shall apply to and govern every action to review judicially a final decision of any administrative agency," (par. 265,) and it is the direction of section 4 that such judicial proceedings "shall be commenced by the filing of a complaint and the issuance of summons *within thirty five days* from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby." (Par. 267, emphasis supplied.) In construing the latter direction we have held that a person seeking a judicial review of an administrative decision must act promptly and within the time prescribed by the statute. (*People ex rel. Illinois Highway Transportation Co.* v. *Biggs,* 402 Ill. 401.) When the statutory definition and mandate are applied in the case at hand, it is manifest that appellees did not seek judicial review in apt time.

The commission's letter of April 26, 1957, which is attached as an exhibit to both complaints, reveals that the administrative proceeding involving Pearce and his hospital commenced on June 2, 1956, at which time Pearce appeared before the commmission's medical advisory committee and submitted to an inquiry into the admission practices of his hospital. As a result of such proceeding the committee made interlocutory findings and recommendations, of which Pearce received due notice, that he should comply with county and State averages with respect to rate of admission and length of hospitalization for recipients of public assistance, and that he should, in six months, present for review a report of his practices in caring for such patients during the six-month period. When his subsequent report revealed a failure to correct his practices,

the commission, by its letter of April 26, 1957, terminated the administrative proceeding by notifying Pearce that both he and his hospital would be dropped from the rolls of the medical aid program effective May 15, 1957. Although the decision was informal in nature, it was none the less a final disposition of appellees' rights and privileges with respect to participation in the tax-supported medical aid program, and was sufficient to support an action for review under the Administrative Review Act. (Cf. *Deutsch* v. *Department of Insurance*, 397 Ill. 218.) Inasmuch as the Public Assistance Code, (Ill. Rev. Stat. 1957, chap. 23, pars. 101-903,) contains neither a provision for rehearing nor an authorization for the commission to modify or alter the administrative decisions it is permitted to make, the order embodied in the commission's letter was, within the definition of the Administrative Review Act, a final administrative decision which terminated the proceedings before the administrative agency. Had judicial review been sought within 35 days after appellees had received the administrative decision, the court in which relief was sought would have had the power to affirm or reverse the decision, or to remand it to the commission for further hearing if the need therefor was found to exist. Appellees, however, did not avail themselves of the remedy afforded by the Public Assistance Code and did nothing until approximately seven months later when they petitioned the commission for retroactive reinstatement to the aid program.

To avoid the consequences of their failure to seek judicial review of the decision of April 26, 1957, and to overcome the express definition and direction of the review act, appellees take the position that the letter of April 26, 1957, was not an administrative decision, final or otherwise, that no administrative proceedings were held until the hearing of January 9, 1958, on their petitions for reinstatement, that the order of February 7, 1958, denying their petitions was the final decision, and that they sought review of the

latter decision within the statutory time. In other words, appellees treat the administrative hearing of June 2, 1956, and the decision of April 26, 1957, as complete nullities. Such a position is untenable in view of the facts of the case and the statutory language which defines and permits judicial review of administrative decisions. Nor does the action of the commission in entertaining the petitions for retroactive reinstatement subsequent to its final order of April 26, 1957, have the effect of reopening the cause, or of detracting from the finality of its determination. The commission is a creature of statute and has no greater powers than those conferred upon it by the legislature. Accordingly, it has been consistently held that an administrative agency may allow a rehearing, or modify and alter its decisions, only where authorized to do so by statute. (See: *People ex rel. Illinois Highway Transportation Co.* v. *Biggs,* 402 Ill. 401; *Illini Coach Co.* v. *Illinois Greyhound Lines, Inc.,* 403 Ill. 21.) No such power or authority was conferred upon the commission by the statutes which control this case.

Moreover, there are yet other circumstances which militate against appellees' position. First of all, their complaints, while purportedly taken from the administrative order of February 7, 1958, seek specific relief only from the order of April 26, 1957, and set forth only the latter order, thus admitting its final and determinative nature. Secondly, as was alleged in the motions to dismiss, the complaints reveal that appellees are seeking a retroactive restoration to the program rolls and the payment of back claims to the corporate appellee. Under comparable circumstances in *Drezner* v. *Civil Service Com.* 398 Ill. 219, this court held that a joinder of a *mandamus* action for such purposes was not within either the purpose or spirit of the Administrative Review Act.

We conclude, therefore, that the complaints were barred by section 4 of the Administrative Review Act, and that

the court below erred in denying the motions to strike and dismiss upon such ground.

Appellees have argued at length that the judgment entered when the commission elected to abide by its motions to dismiss was either a consent judgment, or a judgment entered upon motion of the commission, from which no appeal may be taken. The record, however, discloses that the commission moved the court only that "final order and judgment be entered on defendants' [commission's] motion to strike and dismiss." We see in this prayer neither express nor implied consent, nor a request that judgment be entered for appellees. Its plain purport is, rather, that judgment on the pleadings be entered in favor of the commission. Consequently, the judgment entered for appellees on the pleadings was an involuntary adverse judgment and constitutes no bar to the commission's right to appeal.

For the reasons stated the judgment of the superior court is reversed and the cause is remanded to that court with directions to allow the motions to strike and dismiss the complaints.

*Reversed and remanded, with directions.*