No. 21573.

W. G. FIELDS AND MABEL A. FIELDS *v.* COLORADO STATE DEPARTMENT OF PUBLIC WELFARE AND COLORADO STATE BOARD OF PUBLIC WELFARE.

(437 P.2d 538)

Decided February 19, 1968.

Hubert D. Henry, Robert B. Keating, for plaintiffs in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Thomas A. Nelson, Jr., Special Assistant for defendants in error.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

In their complaint W. G. Fields and Mabel Fields, hereinafter referred to as the plaintiffs, asserted *two* claims for relief against the Colorado State Department of Public Welfare and the Colorado State Board of Public Welfare, which agency and Board will hereinafter be referred to as the Department and the Board respectively, or collectively as simply the defendants.

In the first claim for relief the plaintiffs alleged that they were the owners and administrators of the Fields Nursing Home and in this claim they complained about certain action of the Board occurring on May 8, 1964 whereby the plaintiffs were "eliminated from those nursing homes authorized to receive nursing home vendor payments for the care of welfare department public assistance recipients." More specifically, the plaintiffs averred that the evidence adduced at the hearing before the hearings office did not support the Board's ultimate finding that the recipients of public assistance in the Fields Nursing Home had been "inhumanely treated" or the further finding that there had been a falsification of records submitted for medical care payments by the Nursing Home. Hence, according to the plaintiffs, the Board had abused its discretion by arbitrary and capricious action. The first claim for relief, therefore, is essentially one seeking judicial review of an administrative decision, namely a ruling by the Board that as of May 8, 1964 the plaintiffs were to be cut off from *all* nursing home vendor payments from the medical care fund.

The second claim for relief is essentially one in mandamus *and* for the recovery of money allegedly due the plaintiffs by the Department. In this second claim the plaintiffs alleged that the Fields Nursing Home was

entitled to a so-called group IV rating through March 20, 1964 and a group III rating beginning as of April 20, 1964. However, according to the allegations in the second claim, the Department beginning November 20, 1963 rated the Fields Nursing Home as a group I nursing home, and that as a result of this *reduced* rating from November 20, 1963 till April 20, 1964 the Department failed to pay the plaintiffs the amount of money to which they were entitled for the nursing home services which they had rendered welfare department patients. Accordingly, as concerns their second claim, the plaintiffs prayed that the Department be ordered to "reclassify" the Fields Nursing Home to its "proper" group rating and for the Department to also pay the plaintiffs the amount of money which they should have received from the period of time from November 20, 1963 till April 20, 1964 had they been assigned, as allegedly they should have been, a group IV rating.

By answer the defendants generally denied the allegations of the complaint, as such have been summarized above. Also, the defendants tendered the record as theretofore made before the Board.

Thereafter by appropriate order of court this matter came on for trial on the "first cause of action only." In its ultimate ruling on the matter the trial court first denied the plaintiffs' oral motion to amend the caption of the case to include Fields, Inc., and to amend the complaint so as to show Fields, Inc. as the owner of the nursing home and W. G. and Mabel Fields as the administrators thereof. Then the trial court proceeded to affirm the decision of the Board and accordingly dismissed, not just the first claim, but the entire complaint. The trial court additionally held that the plaintiffs had no capacity to maintain the action and ruled that the complaint *in toto* should be dismissed for that reason too.

The plaintiffs thereafter again filed a motion, this time in written form, seeking leave of court to file an amended complaint wherein Fields, Inc., a corporation,

would be added as a party plaintiff. In this motion it was alleged that the nursing home in question was in fact owned by Fields, Inc., a Colorado Corporation, with W. G. Fields and Mabel Fields each owning one-half of the outstanding and issued stock.

The defendants then filed a motion in which they "stipulated" that Fields, Inc. be made an additional party plaintiff, on the condition that in such event they would then be permitted to file a counterclaim for alleged overpayments to Fields, Inc.

However, the trial court denied plaintiffs' motion to file an amended complaint adding Fields, Inc. as an additional party plaintiff and then denied the defendants' motion for leave to file a counterclaim. Also, the trial court denied plaintiffs' motion for a new trial. A supplemental motion for a new trial pointed out that the judgment of dismissal was in any event too broad, as the second claim was by specific order of court not even involved in the earlier proceeding which by order of court was limited to a consideration of the first claim only. This motion was denied. By writ of error the plaintiffs now seek reversal of the judgment dismissing their complaint.

Under the circumstances outlined above the trial court erred in dismissing the *entire* complaint. By agreement of the parties, confirmed by an express order of court, the trial of this matter was limited to the *first* claim of the complaint. In this setting, then, the second claim was not even before the trial court, and it was of course error to enter a judgment which was so broad as to include dismissal of the second claim. This part of the judgment must therefore be reversed.

However, that portion of the judgment of the trial court dismissing the first claim of the complaint is under the circumstances proper and should be affirmed. The trial court, as we understand it, dismissed the first claim on two grounds: (1) that the decision of the board was correct and should therefore be affirmed; or in the

alternative, (2) that the plaintiffs as nursing service vendors did not have standing or capacity to maintain the action. We shall now consider these two points in reverse order.

The defendants argue that the medical care payments provided for in the Colo. const. Art. XXIV, § 7(c) and by C.R.S. 1963, 101-1-1, et seq. are but a part of the *total* pension given an individual old age pensioner. *Ergo*, it is argued, this is strictly a matter between the individual pensioner and the Department and one in which the plaintiffs as operators of a nursing home where pensioners reside have no interest at all. Furthermore, according to the argument of the defendants, the plaintiffs are not "aggrieved persons adversely affected by the agency action," as that phrase is used in the administrative code, and therefore they have no standing to seek judicial review of the Board's decision cutting them off from all medical care payments. C.R.S. 1963, 3-16-5.

With this general line of argument we simply do not agree. From the record before us it is clear that for some time prior to May 8, 1964 the plaintiffs had been rendering nursing services to old age pensioners and the defendants had been making medical care payments on behalf of the pensioners directly to the plaintiffs. However, over a period of many months complaints regarding the operation of this home had been received by the Department. Accordingly, the Board determined that a full-scale hearing should be held in order to look into the entire matter. To facilitate the matter the Board directed that one of its "hearing officers" should conduct the actual hearing. In due time this hearing was held, with the Fields at all times being represented by counsel. Upon hearing the Department called some eleven witnesses in support of their basic contention that the Fields' nursing home was being run not just in a generally unsanitary manner, but that the home really was in a downright filthy condition, and that

furthermore there had been some falsification of records as to the number of nurses on duty at the home. These witnesses were vigorously cross-examined by counsel for the Fields. The two Fields then had their "day in court" and gave to the hearing's officer their version of the dispute. At the conclusion of the hearing the testimony was transcribed and given to the Board. After deliberation the Board, as indicated above found, among other things, that the old age pensioners in this nursing home were being inhumanely treated, "within the meaning of this term as used in the regulations of this Board," and further found that there had been some falsification of records concerning the number and type of personnel on duty at the home. Based on these findings, the Board then entered a "judgment and decision" that the Fields Nursing Home "be eliminated from those nursing homes authorized to receive nursing home vendor payments for the care of welfare department public assistance recipients."

In this particular setting it appears to us that the plaintiffs from their point of view, at least, were "aggrieved persons" who were "adversely affected" by the action of the Board. The Board was inquiring, as it had a perfect right to do, into the conduct and operation of this nursing home. The Board then found that the home was so poorly and sloppily run and mismanaged that it would no longer be entitled to medical vendor payments. In a very real sense, then, it was the nursing home which was "on trial" before the Board. Certainly the traditional concept of "fair play" suggests quite strongly that the plaintiffs are somewhere and in some manner entitled to a review of the determination of the Board. And in our view resort to the courts for this review was under the circumstances quite proper.

Our attention has not been directed to any authority bearing *directly* on the capacity or standing of these plaintiffs to bring this action. In *Pearce Hospital Foundation v. Illinois Public Aid Commission,* 15 Ill.2d 301,

154 N.E. 2d 691, it was apparently *assumed* that persons, situated somewhat similarly to these plaintiffs, could maintain an action seeking review of an administrative decision that a doctor and his hospital should be dropped from the rolls of an Illinois medical aid program. We conclude, then, that the plaintiffs do have the capacity and standing to file a claim of the type asserted in their first claim for relief.

 Our review of the record, however, convinces us that there is ample evidence to support the determination of the Board that the old age pensioners in the plaintiffs' nursing home were inhumanely treated and that there had been some falsification or misstating of records as to the number and type of personnel on duty at the home. Admittedly this is not a case of inhumane treatment of the type meted out at, for example, the infamous Dachau concentration camp during World War II. But there is nevertheless much evidence in this record to indicate that this nursing home was most unclean and that there was such a lack of sanitation as to warrant the conclusion that the nursing home was generally unfit to house old age pensioners and thereby be entitled to receive a part of their pension monies, namely a medical care payment. We see no need to detail the evidence as to rats scampering across the floors, six patients assigned to one room which had no toilet and but one, open and well-filled, commode and the other incidents of this same general type. Without belaboring the point, we conclude that the record supports the action of the Board.

The judgment of the trial court dismissing the first claim is therefore affirmed. The judgment of the trial court dismissing the second claim, however, is reversed and the cause remanded with the direction that the second claim be reinstated; that thereafter both plaintiffs and defendants be granted the opportunity to amend their pleadings, if they still be so inclined, and that any further proceedings in connection with the

second claim, and any counterclaim which may be filed by the defendants, be consonant with the views herein expressed. By this opinion we are not in any manner passing on the merit of plaintiffs' second claim, or on any counterclaim which may be filed by the defendants. This phase of the dispute relates primarily to whether there was an underpayment or an overpayment to the plaintiffs for the period of time from November 20, 1963 to April 20, 1964 and this is a matter which has not yet been litigated.