JAMES STOVER, Plaintiff-Appellee, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF O'FALLON, Defendant-Appellant.

Fifth District   No. 5—95—0920

Opinion filed September 16, 1997.

CHAPMAN, J., dissenting.

Robert J. Sprague, of Sprague & Urban, of Belleville, for appellant.

Bruce N. Cook, of Cook, Shevlin, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, James Stover, filed a complaint in the circuit court of St. Clair County for judicial review of an administrative decision of defendant, the Board of Fire and Police Commissioners of the City of O'Fallon (Board). Plaintiff filed the action alleging that he should have been promoted to the rank of captain. Defendant instead promoted Lieutenant Scott Battoe. The circuit court denied defendant's motion for summary judgment and entered an order remanding plaintiff's case to defendant to:

"1. Recalculate the final score of James Stover and Scott Battoe for the rank of captain without consideration of the results of their oral interview; [and]

2. Exercise statutory authority consistent with the court's determinations herein and appoint a captain based on the revised final scores."

The circuit court subsequently reconsidered the above order and, ultimately, promoted plaintiff to the rank of captain. On appeal, defendant raises three issues: (1) whether the trial court erred in refusing to grant defendant's motion for summary judgment; (2) whether

plaintiff waived his rights to promotion based on the March 21, 1992, examination by participating in the new examination; and (3) whether the circuit court erred in holding that defendant could not administer the captain's test to Lieutenant Battoe and then place him on the eligibility list. We affirm.

In this appeal, defendant has filed a motion to dismiss. This court denies said motion.

## FACTS

On August 19, 1989, defendant adopted rules which provided that promotional tests for vacancies occurring within the police department were to be comprised of the following components: written examination—40%, oral examination—30%, job performance—20%, years of service—5%, college credit—3%, paramedic points—2%. Defendant further provided that point totals are to be accumulated and that education, experience, and paramedic points, along with any veterans' preference, are to be added. However, defendant's attorney admitted that the rules were not publicized and published as required by section 10—2.1—5 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/10—2.1—5 (West 1992)).

In order to become a captain on the O'Fallon police department, one must hold the rank of lieutenant. On March 21, 1992, plaintiff was the only lieutenant on the police force. Plaintiff took a written examination for captain on that date, even though there was no vacancy in the rank of captain. The department was attempting to establish a register of eligibles for the rank of captain. Plaintiff was never administered any other components of the promotional test as outlined above. No captain's eligibility list was posted after plaintiff completed the written examination.

On October 26, 1992, approximately seven months after plaintiff took the written examination for captain, Scott Battoe was promoted to lieutenant. Then on May 3, 1993, Captain Norman Fitch retired, creating an opening in the rank of captain. On May 8, 1993, defendant recognized that a vacancy existed in the rank of captain as of May 3, 1993.

Gene Nute, the Board's chairman, admits that defendant failed to follow through on testing in March 1992, after plaintiff took the written component. Nute explained:

"It was our intent to create and have on file a list from which to promote[,] even though no vacancy was open nor [sic] projected *** . The problem is that we failed to follow through and administer an oral exam, etc., and complete the testing process to arrive at a final score and post/publish a Captain's Promotion List as such. For some reason the ball got dropped[,] and we on the board never

finished what we had started. I wish I knew why, but it was just one of those things. No need to point fingers here. We take responsibility for what we did not do."

Nute sought legal advice as to how to proceed.

Defendant eventually allowed Lieutenant Battoe to take the written and oral exams and allowed plaintiff the opportunity to either retake the written exam or stand on his score from the written exam administered on March 21, 1992. On May 19, 1993, defendant sent plaintiff the following letter outlining these options.

"Dear Lieutenant Stover:

The O'Fallon Board of Fire & Police Commissioners has been authorized to fill the vacant position of Captain on the force. As you are aware, you took the written exam for Captain in March of 1992[;] however, the oral part of the examination process was never completed[,] nor [was] a promotion list compiled and posted.

As you have already tested on the written, you have a choice. You can stay with the score you received or you can re[ ]test. The choice is yours. Please indicate your preference below.

The written exam will be given to all eligibles at a date to be mutually agreed upon. Oral examination will follow the written test, but not necessarily on the same date. The results of both the oral and written combined with other variables will be put together and a promotion list posted. The Board will then select one, filling the Captain vacancy. If you have any questions concerning the above, I have been designated by the full board to be the contact individual. Best of luck."

At the bottom of the letter, plaintiff checked the line stating that he preferred to stand on his March 1992 test score. Plaintiff signed and dated this letter and returned it to Nute.

Both plaintiff and Battoe subsequently participated in the oral examination. Plaintiff received a score of 62.42% on the written examination, International Personnel Management Test Number 565. Battoe received a score of 72.72% on his written examination, also International Personnel Management Test Number 565. Plaintiff received scores of 30, 30, and 30 on his oral examination, while Battoe received scores of 30, 31, and 31. On June 25, 1993, a captain eligibility list was posted, ranking Battoe first with a score of 78.28% and plaintiff second with a score of 75.96%. On June 27, 1993, plaintiff sent defendant a letter stating, "I would respectfully request a hearing by the [Board] in order to present improprieties I believe existed in the procedures used to establish the Captains [*sic*] promotional eligibility register dated June 25, 1993." In his letter, plaintiff contended, *inter alia*, that in the past defendant had in some instances not posted eligibility lists when only one officer was eligible

for promotion, and in these instances, such persons were not offered or required to take an oral interview. As part of the record for administrative review, a captain's eligibility list, dated March 2, 1991, was submitted in which only one name appears, Norman Fitch.

Defendant refused plaintiff's request for an evidentiary hearing. On July 9, 1993, plaintiff filed a complaint for writ of *mandamus* and/or administrative review. On August 9, 1993, defendant filed a motion to dismiss and requested a hearing on said motion. On September 3, 1993, plaintiff filed an amended complaint, adding a third count, for declaratory judgment. Defendant filed a motion to dismiss count III. On December 23, 1993, defendant filed a motion for summary judgment as to count II on the basis that the cause was not commenced within 35 days as required by section 3—103 of the Code of Civil Procedure (the Code) (735 ILCS 5/3—103 (West 1992)).

On August 4, 1994, the trial court dismissed count I (*mandamus*) and count III (declaratory judgment) but denied defendant's motion for summary judgment. Defendant filed a motion asking the court to reconsider its ruling on the motion for summary judgment. On September 22, 1995, the trial court entered a 14-page order denying defendant's motion to reconsider its ruling on the motion for summary judgment and ordering defendant to recalculate the scores between plaintiff and Battoe without considering the oral exam. Plaintiff filed a motion to reconsider. Defendant also filed a posttrial motion. On November 15, 1995, the circuit court denied defendant's posttrial motion and granted plaintiff's motion to reconsider. The circuit court ordered defendant to promote plaintiff to the rank of captain on the basis that the date a vacancy occurs is the logical point in which a promotional list is frozen. Therefore, since plaintiff was the only person who did any testing as of May 3, 1993, the date the vacancy occurred, plaintiff was the only person eligible to become captain. Defendant appeals from the order denying its motion for summary judgment and the order directing defendant to promote plaintiff to captain.

## ANALYSIS

### I

The first issue we are asked to consider is whether the trial court erred in refusing to grant defendant's motion for summary judgment. Defendant contends that plaintiff's failure to file his complaint within 35 days from May 19, 1993, the date the letter was sent to plaintiff by defendant informing plaintiff of defendant's decision to give a new exam for the rank of captain and offer plaintiff the opportunity to either retake the written examination or stand on his previous score,

entitles defendant to summary judgment. Plaintiff responds that until defendant decided to promote Lieutenant Battoe to the vacancy, the issue of promotion was not ripe or final and, therefore, the May 19, 1993, letter was not a statement of defendant's final administrative decision as to plaintiff.

■ Section 3—103 of the Code provides in pertinent part:

"§ 3—103. Commencement of action. Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby." 735 ILCS 5/3—103 (West 1992).

"[T]he 35-day [requirement] is jurisdictional; if a complaint is not timely filed, no jurisdiction is conferred on the circuit court and judicial review of the administrative decision is barred." *Lockett v. Chicago Police Board*, 133 Ill. 2d 349, 354-55, 549 N.E.2d 1266, 1268 (1990).

■ Section 10—2.1—17 of the Illinois Municipal Code (65 ILCS 5/10—2.1—17 (West 1992)) provides that the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1992)) "shall apply to and govern all proceedings for the judicial review of final administrative decisions of the board of fire and police commissioners hereunder." This statute expressly adopts the Administrative Review Law to review final administrative decisions of defendant. *Schickedanz v. City of O'Fallon*, 248 Ill. App. 3d 746, 748, 618 N.E.2d 1289, 1290 (1993); *Mandeville v. Trucano*, 225 Ill. App. 3d 505, 588 N.E.2d 327 (1992). An administrative decision is defined as:

"[A]ny decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3—101 (West 1992).

The letter dated May 19, 1993, notified plaintiff that he would be required to complete testing, but it did not notify him that he would not be promoted. There is nothing in the letter that indicates that the proceedings before defendant were terminated. To the contrary, the letter notifies plaintiff that the proceedings are ongoing.

Defendant cites various cases in support of its proposition that the May 19, 1993, letter constituted a final administrative decision; however, we find all such cases distinguishable. For example, in *Schickedanz*, the plaintiff tested for a position on the O'Fallon police department and was put on the police patrol officer final eligibility roster. When the position became vacant, the plaintiff was not hired and was told he would not be employed as a police officer by the city.

*Schickedanz*, 248 Ill. App. 3d at 747, 618 N.E.2d at 1289. The *Schickedanz* court found that this notification "constituted a final administrative decision as it affected the legal rights, duties, and privileges of the plaintiff," and, thus, the Board's decision not to hire the plaintiff was reviewable only under administrative law. 248 Ill. App. 3d at 748, 618 N.E.2d at 1290. In *Schickedanz*, the plaintiff was notified that he would not be hired, while in the instant case, plaintiff was notified that defendant expected him to complete further testing. It is not evident from the May 19, 1993, letter from Nute to plaintiff that plaintiff would not be promoted to the rank of captain.

Meanwhile, *Varnes v. Lentz*, 30 Ill. App. 3d 806, 332 N.E.2d 639 (1975), also cited by plaintiff, held that when the Board of the State Employees Retirement System notified the plaintiff of its determination that he was no longer eligible to receive retirement pay while employed as a judge, that decision was a final, appealable administrative decision and the plaintiff had only 35 days from the date the letter was sent in which to file his complaint for administrative review. Likewise, in *Pearce Hospital Foundation v. Illinois Public Aid Comm'n*, 15 Ill. 2d 301, 154 N.E.2d 691 (1958), our supreme court considered the question of whether notification by the administrative agency of the action for which administrative review was sought was a final administrative decision within the meaning of the Act. In that case, the Public Aid Commission, by a letter dated April 26, 1957, notified Dr. Pearce that both he and his hospital would be dropped from the rolls of the medical aid program effective May 15, 1957. The *Pearce* court held:

> "Although the decision was informal in nature, it was none the less a final disposition of appellees' rights and privileges with respect to participation in the tax-supported medical aid program[ ] and was sufficient to support an action for review under the Administrative Review Act [(Ill. Rev. Stat. 1957, ch. 110, par. 264 *et seq.*)]." 15 Ill. 2d at 306, 154 N.E.2d at 694.

■ In the instant case, the May 19, 1993, letter signed by Gene Nute notified plaintiff that defendant's position was that it did not complete the testing process it started in March 1992 and, therefore, plaintiff would be required to complete testing in order to be considered for the vacant captain's position. We agree with plaintiff that this letter did not constitute a final administrative decision which terminated proceedings before defendant. Defendant did not notify plaintiff he would not be promoted, only that more testing was requested. Therefore, we find that the trial court did not err in refusing to grant summary judgment in favor of defendant.

The second issue we are asked to address is whether plaintiff

waived his rights to promotion based on the March 21, 1992, test by participating in the new examination process. Defendant asserts that plaintiff waived any right to promotion he might have had, and in support of this argument defendant cites *DeGuiseppe v. Board of Fire & Police Commissioners*, 30 Ill. App. 3d 352, 332 N.E.2d 405 (1975). In *DeGuiseppe*, names that had been on a promotional list, including the plaintiff's, for more than three years were stricken. The *DeGuiseppe* court found that the plaintiff waived any right under the earlier promotional register when he submitted himself to a later promotional examination. Plaintiff responds that he did not voluntarily participate in the new testing process and points out that he actually refused to retest on the written portion of the examination. We find that plaintiff did not voluntarily waive his rights to promotion under the March 21, 1992, test.

■ Here, plaintiff took the written portion of the examination on March 21, 1992. Thereafter, defendant failed to administer any other of the components of the test and failed to post a register of eligibles in accordance with section 10—2.1—14 of the Municipal Code (65 ILCS 5/10—2.1—14 (West 1992)). That section provides, in pertinent part:

> "§ 10—2.1—14. Register of eligibles. The board of fire and police commissioners shall prepare and keep a register of persons whose general average standing, upon examination, is not less than the minimum fixed by the rules of the board, and who are otherwise eligible. These persons shall take rank upon the register as candidates in the order of their relative excellence as determined by examination, without reference to priority of time of examination.
>
> Within 60 days after each examination, an eligibility list shall be posted by the board, which shall show the final grades of the candidates without reference to priority of time of examination and subject to claim for military credit. Candidates who are eligible for military credit shall make a claim in writing within 10 days after the posting of the eligibility list or such claim shall be deemed waived." 65 ILCS 5/10—2.1—14 (West 1992).

Defendant, through Gene Nute, in a commendable manner, took full responsibility for its failures in this regard. To say under these circumstances that plaintiff waives his right to promotion under the March 21, 1992, examination would be to completely ignore defendant's failure to follow legislative mandates and its own procedures. In our estimation, any waiver argument is defeated by an even stronger estoppel argument due to defendant's omissions, oversights, and just plain mistakes. For these reasons, we agree with plaintiff that *DeGuiseppe* is distinguishable from the case at bar.

## II

The final issue we are asked to consider is whether the circuit court erred in holding that defendant could not administer the captain's eligibility test to Lieutenant Battoe and then place him on the eligibility list. Defendant contends that defendant had the authority to test Lieutenant Battoe because it is empowered to keep an ongoing promotional eligibility roster. Defendant asserts that our General Assembly clearly intended that boards of fire and police commissioners could test and add to the register at any time. Plaintiff's response, in effect, is that the promotional list freezes once a vacancy is declared. We agree with plaintiff that this is the correct interpretation.

■ Section 10—2.1—14 of the Municipal Code mandates that the board of fire and police commissioners prepare and keep a register of persons who are eligible for appointment. "These persons shall take rank upon the register as candidates in the order of their relative excellence as determined by examination, without reference to priority of time of examination." 65 ILCS 5/10—2.1—14 (West 1992).

Section 10—2.1—9 of the Municipal Code provides that a board shall strike the names of candidates for original appointment after their names have been on the list for more than two years. 65 ILCS 5/10—2.1—9 (West 1992).

Section 10—2.1—15 provides, in pertinent part:
> "The board shall strike off the names of candidates for promotional appointment after they have remained thereon for more than 3 years, *provided there is no vacancy existing which can be filled from the promotional register.*" (Emphasis added.) 65 ILCS 5/10—2.1—15 (West 1992).

■ After reviewing the above statutes, we agree with defendant that a board is empowered to keep an ongoing promotional eligibility roster. However, we cannot agree that the language of section 10—1.2—14 which provides, "without reference to priority of time of examination," means that names can be added at any time. 65 ILCS 5/10—2.1—14 (West 1992). Instead, we agree with the circuit court that these statutes should be construed so that the date a vacancy is declared is the date the list is frozen and no new names can be added. This approach was embraced by our colleagues on the Third District Appellate Court in *Hammer v. City of Peoria Board of Fire & Police Commissioners*, 196 Ill. App. 3d 306, 553 N.E.2d 744 (1990).

In *Hammer*, the record showed that on July 7, 1982, a promotional list for the rank of lieutenant became effective for the police department. On July 3, 1985, the defendant struck the names of all remaining candidates appearing on that register. The plaintiffs held the two

top positions on the list on July 3, 1985. The plaintiffs objected to the 1982 list being struck and argued that if any vacancies existed for the rank of lieutenant on July 3, 1985, the defendant was required to promote using the 1982 list. *Hammer*, 196 Ill. App. 3d at 307, 553 N.E.2d at 745. While the *Hammer* court agreed with our construction of section 10—2.1—15 of the Municipal Code, it found that no vacancy existed on the date the 1982 list was struck. 196 Ill. App. 3d at 309, 553 N.E.2d at 746.

Here, the circuit court, relying on *Hammer*, correctly pointed out the folly of an interpretation allowing for ongoing testing after the date a vacancy is declared. Since we find that the circuit court's interpretation of section 10—2.1—15 was correct, we find that the trial court did not err in holding that defendant could not administer the captain's test to Lieutenant Battoe and then place him on the eligibility list. This is not to say that we believe that names cannot be added to the original list for future promotions. The language of section 10—2.1—14 which provides, "without reference to priority of time of examination," in our estimation clearly allows names to be added. 65 ILCS 5/10—2.1—14 (West 1992). However, the language of section 10—2.1—15 stating, "provided there is no vacancy existing which can be filled from the promotional register," when read with section 10—2.1—14, indicates no addition to the list once a vacancy has occurred. 65 ILCS 5/10—2.1—15 (West 1992). For this promotion, the list was frozen when the vacancy occurred.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

*Defendant's motion to dismiss denied; judgment affirmed.*

KUEHN, P.J., concurs.

JUSTICE CHAPMAN, dissenting:
Merit. The ability to perform. Good character. These are the qualities of employees that article 10, division 2.1, Board of Fire and Police Commissioners, of the Illinois Municipal Code is intended to guarantee. *Mueller v. Board of Fire & Police Commissioners*, 267 Ill. App. 3d 726, 732, 643 N.E.2d 255, 260 (1994). The statutory scheme is intended to guarantee access to eligibility for employment based on a fair consideration of the applicant's qualifications. See *Peoria Police Sergeants v. City of Peoria Board of Fire & Police Commissioners*, 215 Ill. App. 3d 278, 574 N.E.2d 1240 (1991). Freezing the list of eligible applicants at the time a vacancy occurs is inconsistent with the statutory objectives of hiring, promoting, and retaining quality applicants.

Section 10—2.1—14 of the Illinois Municipal Code provides:
"The board of fire and police commissioners shall prepare and keep a register of persons *** otherwise eligible. These persons shall take rank upon the register as candidates in the order of their relative excellence as determined by examination, *without reference to priority of time of examination.*" (Emphasis added.) 65 ILCS 5/10—2.1—14 (West 1994).

I agree with the majority that a board is empowered to keep an ongoing promotional eligibility roster. However, I cannot agree that the phrase, "without reference to priority of time of examination," mandates that the list of eligibles be frozen at the time a vacancy occurs. In fact, it suggests just the opposite. The timing of an applicant's examination is not the deciding factor; it is a nonfactor. The ranking of the applicants is to be made based on their relative excellence without regard to when they took the exam. Why then should an arbitrary cutoff time become the most important factor in determining eligibility? In my judgment, it should not.

In construing a statute so as to give effect to the intention of the legislature, a court will read the provisions of the statute as a whole in conformity with its dominating general purpose and in accordance with its practical application. *Balmes v. Hiab-Foco, A.B.*, 105 Ill. App. 3d 572, 574, 434 N.E.2d 482, 484 (1982). In doing so, a court will avoid a construction that results in absurdity, inconvenience, or injustice. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 363, 489 N.E.2d 1374, 1379 (1986). The Municipal Code does not state that the eligibility list must be frozen at the time a vacancy occurs. As a practical matter, why would it be frozen, for to do so prevents those employees who learned of the availability of the position only when the vacancy occurred from ever applying.

In examining division 2.1 as a whole, it is obvious that the legislature intended that the Board promulgate rules to provide for the orderly appointment and promotion of employees based on public, competitive, qualifying examinations and for the removal of such employees only for cause. *Mueller v. Board of Fire & Police Commissioners*, 267 Ill. App. 3d 726, 731-32, 643 N.E.2d 255, 260 (1994); 65 ILCS 5/10—2.1—6 (West 1994). In view of the important statutory objectives of hiring, promoting, and retaining applicants on the basis of ability and merit, I cannot fathom a system that would arbitrarily freeze the list of eligibles at the time a vacancy occurs. In this case there is no indication that the appointment from lieutenant to captain was an emergency. The entire procedure from examination to appointment was accomplished fairly quickly. Although administrative efficiency might suggest that there should be some point in

time when the list of eligible applicants is frozen, it seems arbitrary and unfair to potential candidates to freeze the list when a vacancy is created. In order to do justice to potential candidates and, more importantly, to recruit from the widest pool of the most qualified candidates for the benefit of the community, eligible candidates should be permitted to apply beyond the date a vacancy occurs, which, as I have indicated, may be when most prospective applicants learn of the availability of the position.

Finally, my research has not revealed any case discussing the issue at bar. Contrary to the majority's declaration, *Hammer v. City of Peoria Board of Fire & Police Commissioners*, 196 Ill. App. 3d 306, 553 N.E.2d 744 (1990), does not support the majority's position. I believe the legislature's intent is clearly evident, and I would reverse the decision of the trial court.