BOARD OF EDUCATION OF MUNDELEIN ELEMENTARY SCHOOL DISTRICT NO. 75, Petitioner, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD et al., Respondents.

Fourth District   No. 4—88—0241

Opinion filed February 9, 1989.

Everett E. Nicholas, Jr., and Phillip H. Gerner III, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Educational Labor Relations Board.

Gregory J. Malovance and William G. Miossi, both of Winston & Strawn, of Chicago, and Sandra Holman, of Illinois Education Association, of Springfield, for respondent Mundelein Education Association.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner, Board of Education of Mundelein Elementary School District No. 75 (District or Board), appeals the revised order issued by the Illinois Educational Labor Relations Board (IELRB), requiring the District to engage in mandatory bargaining with the respondent, Mundelein Education Association, IEA-NEA (MEA), over the unilateral changes in the teachers' wages, hours, or terms and conditions of employment. (*Mundelein Elementary School District No. 75*, 4 Pub. Employee Rep. (Ill.) par. 1052, case No. 85—CA—0057—C (Illinois Educational Labor Relations Board, March 4, 1988).) The District's primary argument is that the revised order is the result of an improper reconsideration by the IELRB of its previous order. The District raises four additional arguments addressed to the revised order. We conclude that the IELRB had no authority to reconsider its previous order. We vacate the revised order and do not address the remaining issues presented in this appeal.

Prior to the 1985-86 school year, the District operated three elementary schools (grades K through 6) and a junior high school (grades 7 through 8). For the 1985-86 school year, the District adopted a middle school (grades 6 through 8) format.

On July 25, 1983, the Board directed that the administration study the possibility of adopting a middle school format in the District. In December 1983, the District's systemwide policy committee (SPC) established a middle school committee to study the middle school concept. The SPC is a faculty curriculum council consisting of representatives from each school, the learning center area, the special services area, the business manager, the building principals, and the superintendent. The MEA president, Frances Hansen, was a member of the SPC.

The principal of the junior high was head of the middle school study committee, which included several members of the MEA, including Joan Reese, who later became the MEA president. A report

from this committee called for converting the junior high school to a middle school for grades 6 through 8. The middle school concept included "as a core component team planning and scheduling."

At a meeting in August 1984, the Board voted to reorganize the school for the 1985-86 school year. The Board held public hearings on the matter on October 8 and October 15, 1984. After these hearings, a report, which summarized the possible alternatives for reorganization, was submitted to the Board and was also given to the MEA. The Board scheduled a special meeting for October 29, 1984, at which a final decision was to be made.

While the meetings regarding reorganization were ongoing, the District and the MEA were in the process of negotiating a new collective-bargaining agreement. Negotiations began in the spring of 1984 and continued until an agreement was reached on October 24, 1984. During this time, both sides negotiated over a maintenance-of-standards clause. While the MEA repeatedly told the District it did not want to interfere with the reorganization plan, it wanted assurances that preparation time for teachers as well as the length of the work day would remain the same. Both of these matters were finally incorporated into the new collective-bargaining agreement reached on October 24, 1984.

On October 29, 1984, the District decided to establish a middle school, including grades 6 through 8, at the then junior high school. The MEA was then asked to become involved in implementing the new school format. In December 1984, meetings were held by the middle school committee which began discussions involving the new schedules for teachers. The District also met with the MEA president in December 1984 to discuss the reorganization. No bargaining was requested by the MEA at this time regarding any aspect of the reorganization or its impact on the teachers' working conditions.

Proposed teaching schedules were first presented to the middle school teachers in January 1985. However, no final decision on the new schedules was made until February 25, 1985. These proposed schedules reflected an increase of one period each day over the schedule as it then existed in the school.

On March 18, 1985, the junior high school teachers were provided with the final schedule for the 1985-86 school year. During the 1984-85 school year, the junior high school day included seven teaching periods, one of which was used as a teacher planning period and each of which was 52 minutes in length. Each teacher taught five academic classes and a "mini course." The mini courses were intensive, "exploratory" courses scheduled for one week after spring vacation. The

1985-86 teaching schedule consisted of eight teaching periods each day, each 45 minutes in length, one of which was a planning period. Teachers each taught an "exploratory" course, plus five academic classes. The exploratory courses were elective courses, scheduled for one period each school day for 4½ weeks. Most of the teachers in the middle school were assigned an "exploratory course" in the same subject area as the "mini" course they had taught the previous year. The 1985-86 schedule did not lengthen or extend the teacher work day, which remained from 7:45 a.m. to 3 p.m. The record reflects that the parties disputed whether teacher-student contact time was changed in the 1985-86 schedule.

On April 3, 1985, the MEA president Hansen sent a letter to Board president Wayne DeVries stating that the District had "unilaterally made a change in the working conditions of the teachers at the Carl Sandburg middle school." Hansen demanded that the district "bargain on this working condition" and requested a meeting within 60 days. On May 10, 1985, Hansen again wrote to DeVries regarding the bargaining demand. DeVries replied by letter on May 17, 1985, stating that the issues "would be more appropriately discussed and clarified through a meeting of the mutual concerns committee as delineated in Article XIII of the contractual agreement." In reply, Hansen demanded bargaining on May 20, 1985. On June 4, 1985, new MEA president Joan Reese reiterated the demand to bargain and set a deadline of June 9, 1985, for the District to reply. On June 10, 1985, Reese again wrote to DeVries setting forth suggested dates for meetings. On June 18, 1985, DeVries wrote to the MEA stating that the District would not engage in mid-term bargaining, but again expressed a willingness to discuss the issue as a "mutual concern."

On July 23, 1985, the MEA filed an unfair labor practice charge, alleging that the District violated sections 14(a)(1) and 14(a)(5) of the Illinois Educational Labor Relations Act (IELRA) (Ill. Rev. Stat. 1985, ch. 48, pars. 1714(a)(1), (a)(5)) by refusing to bargain with the MEA concerning changes made in employees' working conditions. The Executive Director of the IELRB investigated this charge and on November 18, 1985, issued a complaint. The complaint alleged that the District violated sections 14(a)(1) and 14(a)(5) of the IELRA by refusing to bargain with the MEA over the impact of the addition of one class period to the schedule and the change in the teachers' preparation time. Hearings were held on April 14, 15, and 16, 1986, in Chicago.

The hearing officer, in his recommended decision and order issued on October 23, 1986, found that the District unlawfully refused to bar-

gain with the MEA over the impact of the decision to reorganize. However, he concluded that the decision to reorganize was a matter of inherent managerial policy which need not be bargained. The hearing officer further ordered make-whole relief with regard to those employees affected. *Mundelein Elementary School District No. 75,* 2 Pub. Employee Rep. (Ill.) par. 1135, case No. 85—CA—0057—C (Illinois Educational Labor Relations Board, Oct. 23, 1986) (hearing officer).

On November 7, 1986, the District filed exceptions to the hearing officer's decision and a brief in support of those exceptions. The MEA filed a response to the District's exceptions and a supporting brief on December 24, 1986. After review of the hearing officer's recommended decision and order and the exceptions thereto, the IELRB issued an order on October 29, 1987, reversing in part and affirming in part the hearing officer's recommended order. *Mundelein Elementary School District No. 75,* 3 Pub. Employee Rep. (Ill.) par. 1115, case No. 85—CA—0057—C (Illinois Educational Labor Relations Board, Oct. 29, 1987).

In its October 1987 order, the IELRB found that the District had a duty to bargain under section 4 of the IELRA (Ill. Rev. Stat. 1985, ch. 48, par. 1704) over the impact of its decision to reorganize on the MEA members' wages, hours, and terms and conditions of employment. Specifically, the IELRB found that the District was required to bargain regarding the number of teaching periods, but not required to bargain over the alleged changes in the teacher's preparation time. The issue of preparation time was the subject of a clause in the parties' new collective-bargaining agreement signed in January 1985 and thus had already been bargained by the parties.

The IELRB declined to order make-whole relief since it could not calculate the loss, if any, to the teachers who had to prepare an "exploratory" course in place of a "mini" course. The IELRB ordered impact bargaining as the sole remedy.

On November 3, 1987, the District wrote to the IELRB and requested that it amend its October 29, 1987, order by adding the word "impact" to the bargaining order and notice to employees and by changing the period within which the District was required to begin bargaining from 10 days to 35 days. (*Mundelein,* 3 Pub. Employee Rep. (Ill.) par. 1115, at VII—395 (part VII of order at Nos. 1, 2(a) of relief ordered).) The change in the number of days was requested in order that the District be afforded its statutory appeal rights. (Ill. Rev. Stat. 1985, ch. 110, par. 3—103.) The IELRB adopted both of these changes in its November 10, 1987, revised order. *Mundelein,* 3

Pub. Employee Rep. (Ill.) par. 1120, at VII—413 through VII—414 (part VII of order at Nos. 1, 2(a) of relief ordered).

On November 25, 1987, the MEA filed a motion for reconsideration. The MEA stated that the IELRB had failed to address the issue of the unilaterally imposed increase in the teaching periods and instructional time, and that its denial of make-whole relief was inconsistent with other IELRB decisions. On December 3, 1987, the District filed a response to the MEA's motion, alleging that (1) the IELRB had made the necessary and proper findings in support of its decision; (2) a make-whole remedy was inappropriate; and (3) the MEA failed to meet the IELRB's previously adopted standards for granting motions for reconsideration.

On March 4, 1988, the IELRB issued a revised opinion, modifying its October 29, 1987, order. (*Mundelein Elementary School District No. 75*, 4 Pub. Employee Rep. (Ill.) par. 1052, case No. 85—CA—0057—C (Illinois Educational Labor Relations Board, March 4, 1988).) The IELRB concluded that the District had an affirmative obligation to bargain with the MEA over any unilateral change resulting from the addition of the exploratory class. In so ruling, the IELRB recognized the scenario as involving bargaining under section 10 of the IELRA (Ill. Rev. Stat. 1985, ch. 48, par. 1710), and further recognized that the decision to reorganize to middle school format was antecedent to and separate from the potential change in teachers' workload. The IELRB then modified the remedy for the bargaining violation and awarded make-whole relief. In addition, the IELRB ordered the District to comply with the previous bargaining order issued in October 1987.

The District contends that the IELRB had no authority, either by statute or agency rule, to reconsider its initial order of October 29, 1987. The District urges that because this initial order was characterized by the IELRB as a "final order," the only method for review was a judicial review pursuant to section 16(a) of the IELRA. (Ill. Rev. Stat. 1987, ch. 48, par. 1716(a).) The District further states that even if reconsideration authority could be found, the IELRB misapplied its previously adopted standards for reconsideration motions. The IELRB acknowledges it was not authorized by statute or formal rule to reconsider its previous orders but urges that its past practice of reconsidering its initial orders effectuates a *de facto* rule which authorizes reconsiderations.

The MEA's position on appeal is that the initial order was not a final order because material issues were yet to be determined after the first order. Because the order was not final, the MEA contends

that the reconsideration issue is not properly before this court. The MEA also contends that the District itself requested a reconsideration of the first order when it requested changes to this order by its letter of November 3, 1987, and therefore, it cannot now object to the MEA's later request for a reconsideration. In response to this argument, the District strenuously argues that its November 3, 1987, letter merely requested changes because of the clerical errors in the order of October 29, 1987, which errors made the relief ordered inconsistent with the text of the opinion. Moreover, the District contends these changes do not amount to a reconsideration of the matter by the IELRB and do not represent a complete change in the decision of the IELRB as was evidenced by the March 4, 1988, opinion.

We find that the IELRB had no authority to reconsider its order issued on October 29, 1987, and we further agree with the District that its letter requesting clarification of the first order was not a reconsideration of any issue before the IELRB.

■ An administrative decision is a final order if it terminates the proceedings before the agency and fixes the rights and liabilities of the parties involved. (Ill. Rev. Stat. 1987, ch. 110, par. 3—101.) An agency, being a creation of statute, has only those powers specifically conferred upon it. (*Pearce Hospital Foundation v. Public Aid Comm'n* (1958), 15 Ill. 2d 301, 154 N.E.2d 691.) It has no inherent authority to amend or change a decision it has made. (*Reiter v. Neilis* (1984), 125 Ill. App. 3d 774, 778, 466 N.E.2d 696, 699; *Oliver v. Civil Service Comm'n* (1967), 80 Ill. App. 2d 329, 224 N.E.2d 671.) In situations where administrative agency rules purporting to authorize rehearings from agency decisions were not involved, the supreme court has consistently held that an administrative agency may allow a rehearing, or modify and alter its decisions, only when authorized to do so by statute. *Weingart v. Department of Labor* (1988), 122 Ill. 2d 1, 521 N.E.2d 913; *Pearce Hospital,* 15 Ill. 2d at 307, 154 N.E.2d at 695; see also *Caldwell v. Nolan* (1988), 167 Ill. App. 3d 1057, 1061, 522 N.E.2d 175, 179.

■ The IELRA does not expressly grant the IELRB the authority to reconsider its orders. Nor does the IELRA include any guidelines to be followed should a party request reconsideration of the IELRB's orders. The IELRB is given the authority in section 5(h) of the IELRA (Ill. Rev. Stat. 1985, ch. 48, par. 1705(h)) to "adopt, promulgate, amend or rescind rules and regulations in accordance with 'The Illinois Administrative Procedure Act' *** as it deems necessary and feasible to carry out this Act."

Additionally, the Administrative Review Law, section 3—101, indi-

cates legislative recognition to agency rules providing rules on petitions for rehearing in tolling the time for seeking judicial review. Ill. Rev. Stat. 1987, ch. 110, par. 3—101.

However, we need not determine whether or not section 5(h) of the IELRA accords the IELRB the power and authority to adopt rules for reconsideration petitions. The IELRB admits and our research confirms that the IELRB has not adopted a formal rule regarding reconsiderations of its decisions.

Section 1105.220 of the Illinois Administrative Code (80 Ill. Adm. Code 1105.220 (Supp. Jan. 1, 1986)), which governs IELRB decisions and exceptions thereto, states in part as follows:

> "(c) The Board shall review the Hearing Officer's decision and any exceptions *** and shall issue and serve upon all parties its decision and order. This written decision and order shall include the Board's reasons for its decision. This decision is a final decision for the purposes of the Administrative Review Law. (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*)"

The IELRB argues that its previous decision in *Berkeley School District No. 87*, 2 Pub. Employee Rep. (Ill.) par. 1106, case No. 84—CA—0057—C (Illinois Educational Labor Relations Board, Aug. 20, 1986), which announced the standards the IELRB will use in deciding motions for reconsideration, provides the necessary authority for it to reconsider its decisions.

In *Berkeley*, the IELRB set out the following four standards: (1) The offer of newly discovered or previously unavailable evidence; (2) the existence of fraud; (3) the discovery of new matters or issues which for reasons outside of the control of the parties seeking reconsideration were not previously reviewed; and (4) instances of procedural infirmities or an objectively demonstrable error of fact or law made by the board. The IELRB calls these standards *"de facto* rules." In further support of its position, the IELRB cites to *Ackerman v. Department of Public Aid* (1984), 128 Ill. App. 3d 982, 471 N.E.2d 931, where the court held that an informal procedure of an agency had the force and effect of a rule. The IELRB's reliance on *Ackerman* for authority is misplaced in the context of this case.

In *Ackerman*, the agency involved had followed a procedure of conducting administrative hearings over the telephone. This procedure was never formally adopted as a rule but was the only avenue whereby an individual could get a hearing before the agency. The issue in that case involved a person seeking to be reimbursed under section 14.1(b) of the Illinois Administrative Procedure Act (IAPA) (Ill. Rev. Stat. 1983, ch. 127, par. 1014.1(b)) for their costs and attor-

ney fees. This section provides that where "a party has any administrative rule invalidated by a court for any reason *** the court shall award the party *** reasonable expenses of the litigation, including reasonable attorney's fees." The *Ackerman* court found, *only* for purposes of section 14.1(b), that the procedure used by the agency had the effect, force, and impact of a rule and awarded the person his costs under this section. The *Ackerman* court did not, as the IELRB suggests, state that an informal or unauthorized procedure used by an agency is a valid rule in the context for which it was relied upon, *i.e.*, in *Ackerman*, a procedure for conducting agency hearings. The holding of the *Ackerman* case is confined to the facts of that case and provides no authority to support the IELRB's contention in this case.

Moreover, we find the standards adopted by the IELRB in *Berkeley* are not rules that can be utilized by the IELRB because it acted beyond its authority in announcing the standards. As we stated, section 5(h) of the IELRA (Ill. Rev. Stat. 1985, ch. 48, par. 1705(h)) provides that the IELRB shall adopt rules in accordance with the IAPA. Section 4 of the IAPA (Ill. Rev. Stat. 1985, ch. 127, par. 1004) authorizes the adoption of rules by an agency. Sections 5 through 5.03 of the IAPA (Ill. Rev. Stat. 1985, ch. 127, pars. 1005 through 1005.03) provide that no action by an agency to adopt a rule shall be valid unless taken in compliance with section 5. Further, section 5(a) of the IAPA provides that before an agency may adopt any rule, notice and opportunity to comment thereon must be given to the general public in accordance with section 5.01 of the IAPA. (Ill. Rev. Stat. 1985, ch. 127, par. 1005.01.) The IELRB's actions in announcing, by agency opinion, the standards it will apply to reconsideration motions were contrary to the express rulemaking requirements set forth in the IAPA and outside the authority granted in section 5(h) of the IELRA, and thus, are void.

■ We next address the MEA's argument that the order issued on November 10, 1987, was itself the result of a reconsideration by the IELRB of its initial order. We do not agree. An examination of the letter addressed to the IELRB reveals that the request was for a correction in the order portion of the decision so that the order itself was consistent with the opinion from which it was derived and also not in conflict with the statute regarding the appeal period provided to the District. The October 1987 opinion concluded that there was an impact bargaining violation by the District when it failed to bargain the "impact" of its decision to reorganize the schools on the wages, hours, and terms and conditions of teachers' employment. However, the October 1987 order for bargaining did not include the word "im-

pact" but ordered bargaining in such general terms that, according to the District, the order could be construed as requiring bargaining on an impact as well as a decisional basis. The order issued on October 29, 1987, was not substantively changed by the decision issued November 10, 1987, unlike the March 4, 1988, order. Rather, the decision issued in November clarified the October decision. We conclude that the November 10, 1987, order was not a reconsideration of the initial order.

The March 4, 1988, order was the result of an improper reconsideration by the IELRB of its initial decision. An order entered by an administrative agency which lacks the inherent power to make or enter it is void. (*Weingart*, 122 Ill. 2d at 17, 521 N.E.2d at 920.) Accordingly, we vacate the March 4, 1988, order (*Mundelein*, 4 Pub. Employee Rep. (Ill.) par. 1052) issued by the IELRB.

Vacated.

SPITZ and GREEN, JJ., concur.