# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Kildeer-Countryside School District No. 96 v. Board of Trustees of the Teachers' Retirement System, 2012 IL App (4th) 110843**

---

| | |
|---|---|
| Appellate Court Caption | KILDEER-COUNTRYSIDE SCHOOL DISTRICT NO. 96, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE TEACHERS' RETIREMENT SYSTEM OF THE STATE OF ILLINOIS, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0843 |
| Filed | August 3, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the undisputed facts established that a teacher in plaintiff district retired at the end of the 2007-08 school year but started substitute teaching the following year, her contributions to defendant Teacher's Retirement System and the service credits she earned by substitute teaching did not change the conclusion that the substitute teaching was in accordance with the system's rules; therefore, the finding of the system's board of trustees that the teacher did not retire at the end of the 2007-08 school year was reversed, and the order requiring the school district to make an excess-salary contribution to the system was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 10-MR-755; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Judgment reversed; order reversed. |

Counsel on
Appeal

Joseph J. Perkoski (argued) and Camille Cribaro-Mello, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellant.

Ralph H. Loewenstein (argued), of Loewenstein, Hagen & Smith, P.C., of Springfield, for appellee.

Panel

PRESIDING JUSTICE TURNER delivered the judgment of the court, with opinion.

Justices Appleton and Pope concurred in the judgment and opinion.

## OPINION

¶ 1     In October 2010, defendant, the Board of Trustees (Board) of the Teachers' Retirement System of the State of Illinois (TRS), found plaintiff, Kildeer-Countryside School District No. 96 (District), owed TRS a $53,705.27 employer contribution under section 16-158(f) of the Illinois Pension Code (Pension Code) (40 ILCS 5/16-158(f) (West Supp. 2007) (eff. Aug. 21, 2007)). In assessing the contribution, the Board found the District's former employee, Barbara Emde, did not retire under the terms of an exempt collective-bargaining agreement. The District sought administrative review in the Sangamon County circuit court, which affirmed the Board's decision.

¶ 2     On appeal, the District contends it does not owe the employer contribution because Emde's pay increases were exempt under section 16-158(g) of the Pension Code (40 ILCS 5/16-158(g) (West Supp. 2007)). We reverse the trial court's judgment and the Board's order.

¶ 3                   I. BACKGROUND

¶ 4              A. Collective-Bargaining Agreement

¶ 5     In October 2002, the District and Kildeer Education Association entered into a collective-bargaining agreement (Agreement) for the school years 2002-03, 2003-04, 2004-05, and 2005-06. According to the parties, the Agreement terminated on June 30, 2006. (The recommended decision stated an expiration date of June 30, 2008, which is clearly incorrect as the last school year covered was 2005-06.) Article XIII of the Agreement addressed retirement and contained sections 13.1 to 13.3. Section 13.1(b) addressed eligibility for retirement incentives and provided the following:

> "To be eligible for any of the benefits provided in Section 13.2 below, the teacher shall have served at least ten (10) full years as a teacher in the District and be at least fifty-five (55) years of age as of the last day of the school term."

Subsection (b) of section 13.2 of the Agreement provided, in pertinent part, the following:

"During the final two (2) years of employment as a teacher, if a teacher has submitted an unqualified notice of retirement and completed a minimum of ten (10) years of employment in the District as a member of the certified staff, the Board will pay an additional ten percent (10%) increase in compensation over the prior year's compensation.

For each year of service in the District beyond ten (10) years, up to and including twenty (20) years of service as a teacher, the Board will pay an additional one percent (1%) to the prior year's compensation. ***

Any eligible teacher who wishes to retire with this benefit must submit an application in writing to the Superintendent not later than May 15 *** in the school year prior to accessing the District Retirement Program."

¶ 6 With the Agreement was a letter of agreement regarding retirement. The letter stated attached to it was a request-of-district-longevity form and an intent-to-retire notice. While the letter stated documents reflected the intent of article XIII of the Agreement, the letter expressly stated it was not part of the Agreement and was not precedential in nature. The intent-to-retire notice required the employee to acknowledge, *inter alia*, the following: "I will be at least fifty-five (55) years of age within six (6) months of the last day of the current school term as reported to Teachers' Retirement System."

¶ 7                                 B. Emde's Retirement

¶ 8 Emde began teaching for the District in the 1984-85 school year. On April 13, 2006, Emde submitted her intent-to-retire notice, stating she intended to retire at the end of 2007-08 school year. The notice stated her salary would be increased by 20% over the prior year's compensation for the remaining two years. When Emde submitted her intent-to-retire notice, her salary was $88,675. For the 2006-07 school year, Emde received her first 20% increase under section 13.2(b), resulting in a salary of $107,482. The following school year, Emde again received a 20% increase under section 13.2(b), which gave her a final salary as a full-time teacher of $129,630.

¶ 9 In April 2008, the following e-mail exchange took place between Emde and TRS counseling services:

Emde: "I am turning fifty five in December and although I retire from my school district at the end of this year according to [TRS] my retirement is December. Should I complete the PRI [(personalized retirement interview)] now so that the supplementary report and the sick leave certification are completed before I finish the school year?"

TRS: "Your employer will automatically submit your earnings and sick leave information on their annual report in August 2008. We recommend you complete your PRI approximately 6-12 weeks prior to your 55th birthday.

If you do any substitute teaching in the Fall semester, you would need to notify TRS during your PRI of the districts you had worked in so those districts could be sent a supplementary report and sick leave certification.

If you decide to substitute teach in the Fall, you will not be allowed to do any post-retirement employment in a certified position until July 1, 2009."

Emde: "Thank you for this information. Just to clarify, I will be able to substitute until my 55th birthday this year but then no more substituting after that date until the school year is over. Is that correct?"

TRS: "You are correct. You will need to wait until July 1, 2009, before doing any substitute teaching if you substitute leading up to your 55th birthday (your retirement date). There are no restrictions for working in the private sector, university, college or private school. In addition, you may be employed by a school district in a position not covered by TRS without limitation (teacher's aide, lunchroom helper, playground supervisor, etc.)."

¶ 10    Emde's full-time employment with the District terminated on June 9, 2008. During the 2008-09 school year, the District employed Emde as a substitute teacher for a total of 52 days. Her last day of substitute teaching was December 4, 2008. Emde turned 55 on December 5, 2008.

¶ 11    On February 3, 2009, the District's director of business services signed a TRS form, which was a supplementary report for the 2008-09 school year for Emde's retirement benefits. The report listed June 9, 2008, as (1) the last date Emde taught, (2) the effective date of Emde's resignation, and (3) the last day of the school year. It also stated Emde's last school year employed was 2007-08. Moreover, the form listed a total annual salary of $129,630 and retirement contributions of $12,185.22. On February 25, 2009, the District's director of business services signed a second supplementary report for the 2008-09 school year for Emde. The second report listed December 4, 2008, as (1) the last date Emde taught, and (2) the effective date of Emde's resignation. It also stated Emde's last school year employed was 2008-09 and the last day of the school year was June 11, 2009. Last, the form listed a total annual salary of $7,700 and retirement contributions of $723.80.

¶ 12                    C. Employer Contribution Proceedings

¶ 13    In March 2009, TRS notified the District it anticipated the District would owe $53,705.27 under section 16-158(f) of the Pension Code (40 ILCS 5/16-158(f) (West Supp. 2007)) for the retirement-incentive-salary increases given to Emde. On July 9, 2009, Tom Gray, TRS's general counsel, issued a final staff disposition, requiring the District to make the $53,705.27 employer contribution. Under title 80, section 1650.620, of the Illinois Administrative Code (80 Ill. Adm. Code 1650.620 (2012)), the District appealed TRS's decision, asserting the salary increases to Emde were exempt from employer contributions under section 16-158(g) of the Pension Code (40 ILCS 5/16-158(g) (West Supp. 2007)). On appeal, the District and TRS filed cross-motions for summary judgment. To its motion, the District attached the following: (1) the Agreement; (2) Emde's April 13, 2006, intent-to-retire notice; (3) the District's first 2008-09 supplementary report to TRS; (4) the District's second 2008-09 supplementary report to TRS; (5) Emde's e-mail correspondence with TRS; and (6) TRS's July 2009 final staff disposition. TRS's response to the District's exemption argument was the District lost eligibility for the employer-contribution exemption because it continued to

-4-

employ Emde as a substitute teacher after its exempt Agreement expired, and thus Emde retired under the successor, nonexempt collective-bargaining agreement. According to TRS, if Emde had stopped working for the District when she so stated in her intent-to-retire notice, Emde's salary increases would have been exempt under section 16-158(g) of the Pension Code.

¶ 14 In August 2010, a claims hearing committee (Hearing Committee) heard the cross-motions for summary judgment. On September 27, 2010, the Hearing Committee issued its recommended decision upholding TRS's final staff disposition. The Hearing Committee made factual findings, including the following: (1) Emde ceased full-time employment with the District on June 9, 2008; (2) the District continued to employ Emde as a substitute teacher for 52 days in the 2008-09 school year; (3) Emde's substitute teaching is active creditable service under sections 16-106 and 16-106.3 of the Pension Code (40 ILCS 5/16-106, 16-106.3 (West 2008)); (4) Emde's last day of active creditable service with TRS was December 4, 2008; and (5) Emde's effective retirement date with TRS was December 5, 2008, when she turned 55. The Hearing Committee found that, by allowing Emde to continue to teach into the next school year, the District lost its exemption since Emde did not terminate her active service with the District. In October 2010, the District filed exceptions to the recommended decision.

¶ 15 On October 29, 2010, the Board voted to uphold the recommended decision of the Hearing Committee. The District received notice of the Board's decision on November 5, 2010.

¶ 16 On December 8, 2010, the District filed its complaint for administrative review in the Sangamon County circuit court. After reviewing the parties' pleadings and the record of the administrative review proceedings, the court "denied" the District's petition for administrative review on August 23, 2011.

¶ 17 On September 20, 2011, plaintiff filed a timely notice of appeal in compliance with Illinois Supreme Court Rule 303 (eff. May 30, 2008). Accordingly, this court has jurisdiction of this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 18                                        II. ANALYSIS

¶ 19                                   A. Standard of Review

¶ 20 Under section 16-200 of the Pension Code (40 ILCS 5/16-200 (West 2010)), judicial review of the Board's decision is conducted in accordance with the Administrative Review Law (735 ILCS 5/art. III (West 2010)). With administrative cases, this court reviews the administrative agency's decision, not the circuit court's. *Williams v. Board of Trustees of the Morton Grove Firefighters' Pension Fund*, 398 Ill. App. 3d 680, 687, 924 N.E.2d 38, 45 (2010). Section 3-110 of the Administrative Review Law (735 ILCS 5/3-110 (West 2010)) allows review of "all questions of law and fact presented by the entire record before the court." On issues of law, this court reviews the Board's findings *de novo. Speed District 802 v. Warning*, 242 Ill. 2d 92, 111, 950 N.E.2d 1069, 1080 (2011). With the Board's findings of fact, we deem them *prima facie* correct unless they are against the manifest weight of the evidence. *Speed*, 242 Ill. 2d at 111-12, 950 N.E.2d at 1080. An administrative agency's

finding is "against the manifest weight of the evidence only where the opposite conclusion is clearly evident." *Peacock v. Board of Trustees of the Police Pension Fund*, 395 Ill. App. 3d 644, 652, 918 N.E.2d 243, 250 (2009). Finally, as to mixed questions of law and fact, this court applies a clearly erroneous standard of review. *Speed*, 242 Ill. 2d at 112, 950 N.E.2d at 1080. Our supreme court has defined that standard as follows:

"An agency decision will be reversed because it is clearly erroneous only if the reviewing court, based on the entirety of the record, is left with the definite and firm conviction that a mistake has been committed. [Citation.] While this standard is highly deferential, it does not relegate judicial review to mere blind deference of an agency's order." (Internal quotation marks omitted.) *Speed*, 242 Ill. 2d at 112, 950 N.E.2d at 1080-81 (quoting *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 97-98, 862 N.E.2d 944, 950-51 (2007)).

¶ 21 Additionally, we note that, generally, a party may not rely on matters outside the appellate record to support his or her position on appeal. See *Allstate Insurance Co. v. Kovar*, 363 Ill. App. 3d 493, 499, 842 N.E.2d 1268, 1273 (2006). Thus, we will only consider arguments supported by the record on appeal. In its reply brief, the District asks this court to disregard the Board's statement of facts in its entirety because the statement of facts lacks citation to the record and is in the form of an argument. We decline to do so as the Board's statement of facts does contain some citations to the record and we can easily disregard any statements not supported by the appellate record.

¶ 22                            B. Employer Contributions to TRS

¶ 23 TRS was created to provide retirement annuities and other retirement benefits for teachers. 40 ILCS 5/16-101 (West 2008). To determine the proper annuity for a retiring teacher, retirement system staff must determine a member's final average salary. See 40 ILCS 5/16-133(a)(B) (West 2008). "Final average salary" is defined as the average of the highest 4 consecutive years of salary within the last 10 years of creditable service, subject to the rules of the Board. 40 ILCS 5/16-133(b) (West 2008). However, the part of a member's salary that "exceeds the member's annual full-time salary rate with the same employer for the preceding year by more than 20% shall be excluded." 40 ILCS 5/16-133(b) (West 2008).

¶ 24 Public Act 94-4 (Pub. Act 94-4, § 5 (eff. June 1, 2005)) added section 16-158(f) to the Pension Code (40 ILCS 5/16-158(f) (West Supp. 2005)), which required an employer to make a contribution to TRS for the increase in retirement benefits for an employee's salary increase from the preceding year that was more than 6%. The legislature later added section 16-158(g) (Pub. Act 95-331, § 425 (eff. Aug. 21, 2007)), which provides, in pertinent part, the following:

"This subsection (g) applies only to payments made or salary increases given on or after June 1, 2005 but before July 1, 2011. ***

When assessing payment for any amount due under subsection (f), the System shall exclude salary increases paid to teachers under contracts or collective bargaining agreements entered into, amended, or renewed before June 1, 2005." 40 ILCS 5/16-158(g) (West Supp. 2007).

Title 80, section 1650.483(a), of the Illinois Administrative Code (80 Ill. Adm. Code 1650.483(a) (2012)) further explains the above exemption to the employer contribution by stating the following:

"The exemptions from employer contributions provided under *** 40 ILCS 5/16-158(f) for those members who notify their employer of the intent to retire under the terms of an exempt contract or collective bargaining agreement but do not receive such incentives until after the expiration of the contract or collective bargaining agreement shall cease no later than three school years after the expiration of the contract or collective bargaining agreement or June 30, 2011, whichever is earlier."

¶ 25                                    C. Emde's Retirement

¶ 26         The District asserts TRS must exclude all salary increases paid to teachers under a collective-bargaining agreement entered into before June 1, 2005, and its salary increases to Emde were made pursuant to an exempt collective-bargaining agreement. It further argues (1) the District and Emde complied with the terms of the exempt Agreement and (2) Emde's substitute teaching in the year after she retired from the District did not change her retirement date and cause a loss of the exemption from employer contributions. The Board concedes (1) the Agreement at issue is exempt under section 16-158(g) of the Pension Code and (2) the salary increases paid in the 2006-07 and 2007-08 school years did not lose their exempt status by the Agreement's expiration. However, it asserts Emde and the District did not comply with terms of the exempt Agreement because Emde did not actually retire in accordance with her intent to retire notice.

¶ 27         Initially, we note that, in making its argument, the District insists Emde qualified for the retirement incentives under the Agreement. While the Board points out Emde was not eligible to receive the Agreement's retirement incentives because she was not 55 years old by the last day of the school year as required by section 13.1(b) of the Agreement, the Board does not argue the District should be denied the section 16-158(g) exemption because of noncompliance with the agreement, and thus we do not address that issue. Moreover, both parties cite and discuss various bulletins of TRS that addressed sections 16-158(f) and 16-158(g) of the Pension Code in support of their respective arguments. However, the Board did not rely on any TRS bulletin in making its determination, and the bulletins do not address the specific matter at issue in this case. Thus, we also do not address the TRS bulletins.

¶ 28         According to the Board, the key issue is whether Emde severed her employment with the District on June 8, 2008. Section 16-118 of the Pension Code (40 ILCS 5/16-118 (West 2008)) defines "retirement" as "[e]ntry upon a retirement annuity or receipt of a single-sum retirement benefit granted under this Article after termination of active service as a teacher." Applying section 16-118, the Board stated, "in Emde's case, that meant severing her employment with [the District] on June 8, 2008 and retiring effective December 5, 2008." The Board then found Emde did not terminate her active service with the District on June 8, 2008, but, rather, "remained employed" by the District in the 2008-09 school year as a substitute teacher.

¶ 29         The pertinent facts are undisputed. First, Emde only submitted one document stating her

retirement date, which listed a retirement date at the end of the 2007-08 school year. Emde did not submit any other documents to the District changing that retirement date. In an April 2008 e-mail to TRS, Emde stated she was retiring at the end of the school year and understood her retirement was not effective until December when she turned 55. Moreover, the District's original supplementary report to TRS for the 2007-08 school year stated a resignation date of June 9, 2008 (June 8 and 9, 2008, are both listed as the last day of school for the District's 2007-08 school year in various documents). Second, after the last day of the 2007-08 school year, Emde did not remain in her same position with the District, did not remain a full-time employee, and did not receive the same pay. In fact, her pay rate was substantially lower as she received $720.17 per day for the 2007-08 school year and only $148.08 per day as a substitute teacher for the 52 days she worked. Third, Emde's substitute teaching for the District did not violate any TRS rules as TRS did not argue any such violation and its responses to Emde's e-mail inquiries show such activity was permissible. Fourth, Emde made $723.80 in retirement contributions to TRS and earned TRS service credit in the fall of 2008. Fifth, the District's second supplementary report to TRS had a resignation date of December 4, 2008. TRS's response to Emde's e-mail inquiries noted any school district for which she was a substitute teacher would have to submit such a document. Last, Emde's effective retirement date of December 5, 2008, was unchanged by her substitute teaching.

¶ 30    The only reasonable conclusion from the aforementioned undisputed facts is Emde did sever her relationship with the District at the end of the 2007-08 school year and the substitute teaching was a new, temporary relationship between the parties. All of the documentation between Emde and the District shows she retired from her position with the District in June 2008. The only document stating a resignation date later than June 2008 was the second supplementary report that TRS *required* the District to complete with the dates listed due to Emde's substitute teaching. The Board cannot bootstrap a resignation date later than June 2008 by pointing to a document it required the District to complete as a result of the disputed substitute teaching. Moreover, we note that, if Emde had not severed her relationship with the District, her pay would have been substantially higher than $148.08 per day and some new retirement documentation would have been submitted. The fact she still contributed to TRS and earned service credit does not change that conclusion since the substitute teaching was in accordance with TRS rules. Moreover, the supplementary report was required by TRS to address the substitute teaching, not her original employment. Accordingly, the Board's finding Emde did not sever her employment with the District at the end of the 2007-08 school year was against the manifest weight of the evidence, and thus the Board erred by ordering the District to pay TRS an excess-salary contribution of $53,705.27.

¶ 31                                         III. CONCLUSION

¶ 32    For the reasons stated, we reverse the Sangamon County circuit court's judgment as well as the Board's order.

¶ 33    Judgment reversed; order reversed.