# Illinois Official Reports

## Appellate Court

*Sharp v. Board of Trustees of the State Employees' Retirement System*,
2014 IL App (4th) 130125

| | |
|---|---|
| Appellate Court Caption | DAVID M. SHARP, Plaintiff-Appellee and Cross-Appellant, v. THE BOARD OF TRUSTEES OF THE STATE EMPLOYEES' RETIREMENT SYSTEM, JUDY BAAR TOPINKA, Chairperson; and MICHAEL NOSER, DANNY SILVERTHORN, HAROLD W. SULLIVAN, JR., RENEE FRIEDMAN, THOMAS ALLISON, PATRICIA OUSLEY, LORI LAIDLAW, PATRICIA RENSING, DAVID MORRIS, SHIRLEY BYRD, and VIRGINIA YATES, as Trustees of the State Employees' Retirement System, Defendants-Appellants and Cross-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-13-0125 |
| Filed | January 13, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an administrative review action arising from the Board of Trustees of the State Employees' Retirement System's reconsideration and reduction of its calculation of plaintiff's monthly pension benefits upon his retirement from his position as a Secretary of State investigator, the trial court's finding that the Board lacked the statutory authority to reduce plaintiff's pension was upheld on appeal, since the Board reduced the pension when it discovered, several months after the original calculation, that the wrong formula was used and the statute only allows such a modification within the 35-day period following the Board's initial approval of the pension. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 12-MR-725; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow (argued), Assistant Attorney General, of counsel), for appellants. |
| | |
| | Carl R. Draper (argued), of Feldman, Wasser, Draper & Cox, of Springfield, for appellee. |
| | |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion. Justices Turner and Steigmann concurred in the judgment and opinion. |

## OPINION

¶ 1 In March 2011, plaintiff, David M. Sharp, retired from his position as a Secretary of State investigator with the State of Illinois. In April 2011, defendants, the Board of Trustees of the State Employees' Retirement System (SERS), Judy Baar Topinka, chairperson; and Michael Noser, Danny Silverthorn, Harold W. Sullivan, Jr., Renee Friedman, Thomas Allison, Patricia Ousley, Lori Laidlaw, Patricia Rensing, David Morris, Shirley Byrd, and Virginia Yates, as trustees of SERS (collectively, the Board), approved Sharp's monthly pension of $3,171.24. In February 2012, the Board notified Sharp it had computed his monthly pension using the wrong formula (3% rather than 2.2%) resulting in an overpayment of $5,874.21. The Board informed Sharp his monthly pension would decrease to $2,496.16 and arrangements to collect the overpayment would be forthcoming.

¶ 2 Sharp appealed to the SERS executive committee (Committee). Following an April 2012 hearing, the Committee recommended the appeal be denied. In July 2012, the Board ratified the Committee's recommendation. Sharp filed an action for administrative review in the circuit court of Sangamon County. Following a January 2013 hearing, the circuit court reversed the Board, finding it lacked authority to reconsider its earlier pension calculation.

¶ 3 Defendants appeal. Plaintiff cross-appeals seeking attorney fees. We affirm.

¶ 4 I. BACKGROUND

¶ 5 On March 31, 2011, Sharp retired from his position as a Secretary of State investigator with the State of Illinois. Prior to his retirement, Sharp–on at least two occasions–requested pension estimates from SERS. In a July 9, 2010, letter, SERS informed plaintiff his estimated monthly pension assuming a July 31, 2010, retirement (effective date of pension being August 1, 2010) would be $2,897.86 ($2,371.57 from SERS and $526.19 from the Illinois Municipal Retirement Fund (IMRF)). In a February 23, 2009, letter, SERS informed Sharp his estimated

monthly pension assuming a December 31, 2010, retirement (effective date of pension being January 1, 2011) would be $2,970.53 ($2,439.72 from SERS and $530.81 from IMRF). On April 28, 2011, SERS approved Sharp's application for pension benefits filed in November 2010 and noted his monthly checks would be in the amount of $3,171.24 minus any state insurance or federal tax deductions Sharp authorized, if any. The letter further noted the pension was computed using 23 years, 9 months of service (which included total time served as both a Secretary of State investigator and a Department of Children and Family Services employee), but did not list the formula used to compute the amount of his pension or the breakdown between SERS and IMRF.

¶ 6        In letters dated May 19 and May 20, 2011, SERS notified Sharp it had overstated his combined SERS and IMRF pension benefits resulting in an overpayment from SERS of $44.78. The letters noted Sharp's future monthly gross would be $3,148.85, and the $44.78 overpayment would be recovered by deducting this amount from Sharp's June 2011 pension check. Sharp did not appeal.

¶ 7        Nearly nine months later, on February 1, 2012, SERS notified Sharp by letter it had incorrectly computed his pension using the 3% alternative formula (40 ILCS 5/14-110(a)(i) (West 2010)) instead of the 2.2% regular formula (40 ILCS 5/14-108(a) (West 2010)) to which his 15.8 years of employment as a Secretary of State investigator entitled him. As a result of the error in the computation, SERS informed Sharp he was overpaid $5,874.21 between April and December 2011, and SERS would contact him at a future date to discuss recovery of the overpayment. Using the correct formula of 2.2%, Sharp's monthly pension would be decreased from $3,148.85 to $2,496.16. Additionally, SERS stated it would be refunding Sharp $21,798.05 for contributions he made at the higher rate from July 2000 through March 2011. (The record is unclear why Sharp was making contributions at a higher rate and does not cite authority for the rate of contributions.) Sharp appealed to the Committee.

¶ 8        Following an April 2012 hearing before the Committee, during which Sharp testified and his attorney argued, the Committee recommended Sharp's appeal be denied. The Committee concluded as follows: (1) SERS and the Board have authority to correct errors in the calculation of individual contributions and pension payments and may (a) modify benefits to comport with the proper formula, (b) collect overpayments, and (c) refund any excess payments in contributions; (2) equitable estoppel does not apply to the correction of overpayments in pension benefit administration; and (3) the Board is not precluded from correcting ministerial errors made by staff in calculating individual contributions and pension payments. Specifically, the Committee emphasized the purpose of SERS, the Board's fiduciary duty to manage the fund, and the Board's power to audit the fund.

¶ 9        In July 2012, the Board ratified the Committee's recommendation. Sharp filed an action for administrative review in the circuit court of Sangamon County.

¶ 10       Following a January 2013 hearing on administrative review, the circuit court reversed the Board, finding it lacked authority to reconsider the matter. The circuit court did not (1) rule on whether defendants violated the Illinois Administrative Procedure Act (5 ILCS 100/1-1 to 15-10 (West 2010)) by not having a verbatim record of its administrative hearing or (2)

consider whether Sharp is entitled to an award of attorney fees as requested in Sharp's initial complaint.

¶ 11    Defendants appeal and Sharp cross-appeals.

¶ 12                                II. ANALYSIS

¶ 13    On appeal, defendants assert the Board has authority to correct erroneous benefits calculations. Sharp contends defendants had no statutory authority to reconsider the earlier April 2011 final administrative decision and, if they did, the Board violated the Illinois Administrative Procedure Act by (1) applying a policy not promulgated in its adopted rules and (2) adopting a rule in direct conflict with the Illinois Administrative Procedure Act. Additionally, Sharp requests a remand to the circuit court with directions to conduct a hearing on an award of attorney fees and costs.

¶ 14                            A. Standard of Review

¶ 15    Pursuant to section 14-150 of the Illinois Pension Code (Pension Code) (40 ILCS 5/14-150 (West 2010)), we review the Board's decision in accordance with the Administrative Review Law (735 ILCS 5/art. III (West 2010)). *Kildeer-Countryside School District No. 96 v. Board of Trustees of the Teachers' Retirement System*, 2012 IL App (4th) 110843, ¶ 20, 972 N.E.2d 1286. We review the decision of the administrative agency rather than the circuit courts. *McDonald v. Department of Human Services*, 406 Ill. App. 3d 792, 797, 952 N.E.2d 21, 26 (2010). Because this appeal presents purely legal questions, our review is *de novo*. *Department of Human Services v. Porter*, 396 Ill. App. 3d 701, 718, 921 N.E.2d 367, 380 (2009).

¶ 16            B. Board's Authority To Correct Errors in Benefits Calculations

¶ 17    The Pension Code, which governs the Board, provides "the Administrative Review Law *** govern[s] all proceedings for the judicial review of final administrative decisions of the retirement board provided for under this Article. The term 'administrative decision' is defined as in Section 3-101 of the Code of Civil Procedure." 40 ILCS 5/14-150 (West 2010). An "administrative decision" is "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2010). "Decisions of the Board of Trustees shall be final administrative decisions subject to the provisions of the Administrative Review Law ***." 80 Ill. Adm. Code 1540.270(f)(1) (2008). The Administrative Review Law provides, in relevant part, as follows: "Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision ***." 735 ILCS 5/3-103 (West 2010). Here, the Board's April 2011 approval of Sharp's pension in the amount of $3,171.24 per month, less state insurance or federal tax deductions authorized by Sharp, was a final administrative decision. See, *e.g.*, *Sola v. Roselle Police Pension Board*, 342 Ill. App. 3d 227, 231-32, 794 N.E.2d 1055, 1058-59 (2003) (holding the pension board could

not modify its initial pension decision because it was a final administrative decision invoking the Administrative Review Law's 35-day review period); *Karfs v. City of Belleville*, 329 Ill. App. 3d 1198, 1205, 770 N.E.2d 256, 261 (2002) (holding although the pension board may have erred in calculating the pension benefits, the city could not challenge the pension award after the 35-day review period).

¶ 18 "An administrative agency, such as the Pension Board, has no inherent or common law powers, but is empowered to act only pursuant to the authority it is granted by law." *Rossler v. Morton Grove Police Pension Board*, 178 Ill. App. 3d 769, 773, 533 N.E.2d 927, 930 (1989). In other words, under the Administrative Review Law, the review of the Board's initial approval of Sharp's pension was limited to a 35-day period after the decision was issued–regardless of whether the Board or Sharp brought the complaint–unless the General Assembly granted the Board authority to revisit its final decision outside of the 35-day period. See, *e.g.*, *Trigg v. Industrial Comm'n*, 364 Ill. 581, 588, 5 N.E.2d 394, 398 (1936) (although the claim appealed to the supreme court's "sense of equity," the Industrial Commission lacked jurisdiction to reconsider its former order); *Pearce Hospital Foundation v. Illinois Public Aid Comm'n*, 15 Ill. 2d 301, 307, 154 N.E.2d 691, 695 (1958) (holding the Public Aid Commission lacked statutory authority to reconsider its decision after the 35-day review period provided by the then-Administrative Review Act, regardless of whether the Commission tried to bypass the rule by claiming it was a new hearing); *Board of Education of Mundelein Elementary School District No. 75 v. Illinois Educational Labor Relations Board*, 179 Ill. App. 3d 696, 702, 534 N.E.2d 1022, 1026 (1989) (noting "the supreme court has consistently held that an administrative agency may allow a rehearing, or modify and alter its decisions, only when authorized to do so by statute").

¶ 19 We note under the rules promulgated by SERS, all petitions for written appeal of a final decision of the Board must be received by the executive secretary of SERS in its Springfield office within 30 days following notification of the initial disposition of the claim. 80 Ill. Adm. Code 1540.270(c)(1) (2008). However, this rule conflicts with the Administrative Review Law's 35-day time period and nothing in the Pension Code's enabling statute authorizes SERS to apply a shorter time period.

¶ 20 The Board concedes article 14 of the Pension Code (40 ILCS 5/art. XIV (West 2010)) does not grant it the express authority to correct errors it makes in the calculation of pension benefits. However, the Board asserts it has the implicit power to do what is reasonably necessary to carry out its duty, including correcting errors in the calculation of pension benefits at any time. Sharp disagrees and asserts absent an express statutory provision granting the Board continued authority to review its final decision, it is without jurisdiction to do so beyond the Administrative Review Law's 35-day time period. Further, Sharp contends even if the Board has the implicit power to review its final decisions at any time, it must have first promulgated a rule setting forth the procedure for doing so.

¶ 21 The Board cites *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 188, 802 N.E.2d 1156, 1165 (2003), for the proposition an agency's authority may " 'devolve by fair implication and intendment from the express provisions of the [statute] as an incident to achieving the objectives for which the [agency] was created.' *Schalz v. McHenry County*

*Sheriff's Department Merit Comm'n*, 113 Ill. 2d 198, 202-03[, 497 N.E.2d 731, 733] (1986)." According to the Board, its implicit power to correct pension calculation errors is derived from three express provisions of the Pension Code: (1) the objectives for which SERS was created (40 ILCS 5/14-102 (West 2010)), (2) the Board's duty to act as a fiduciary (40 ILCS 5/1-101.2 (West 2010)), and (3) the Board's power to audit the fund (40 ILCS 5/14-135.06 (West 2010)).

¶ 22 SERS was "created to provide retirement annuities and other benefits for employees of the State of Illinois." 40 ILCS 5/14-101 (West 2010). Section 14-102 of the Pension Code provides as follows:

> "The purpose of [SERS] is to provide an orderly means whereby aged or disabled employees may be retired from active service, without prejudice or hardship, and to enable the employees to accumulate reserves for themselves and their dependents for old age, disability, death and termination of employment, thus effecting economy and efficiency in the administration of the State Government." 40 ILCS 5/14-102 (West 2010).

The Board asserts as part of establishing an orderly means of disbursing benefits, it must be able to prevent waste, fraud, and abuse of SERS–which requires the ability to correct errors so as not to deplete the fund. Next, the Board contends forcing it to continue paying benefits not authorized by the Pension Code in perpetuity conflicts with its fiduciary duty and jeopardizes the financial stability of the fund. See 40 ILCS 5/1-109(a), (d) (West 2010) (a fiduciary must act "solely in the interest of the participants and beneficiaries and: (a) [f]or the exclusive purpose of: (1) Providing benefits to participants and their beneficiaries; and (2) [d]efraying reasonable expenses of administering the retirement system or pension fund" and "(d) [i]n accordance with the provisions of the Article of the Pension Code governing the retirement system or pension fund"). Last, the Board argues it would be illogical for the legislature to grant it the power to audit SERS (40 ILCS 5/14-135.06 (West 2010)) but then prohibit it from responding to the audit's findings.

¶ 23 While Sharp recognizes in some cases an administrative agency's powers may evolve by fair implication from an express provision of a statute, he asserts this is not the case here as neither the Board's fiduciary duty nor its audit power implies it has continuing jurisdiction to review its final decisions after the time period provided for by the Administrative Review Law or SERS's own rule. As support for his contention, Sharp points to the express authority granted to municipal police pension boards and the State Universities Retirement System (SURS) to review and correct certain errors outside of the Administrative Review Law's 35-day limit. 40 ILCS 5/15-186.1, 3-144.2 (West 2010).

¶ 24 We agree with Sharp the legislature expressly granted SURS the authority to correct a mistake in benefits at any time. Section 15-186.1 of the Pension Code provides as follows:

> "If [SURS] mistakenly sets any benefit at an incorrect amount, it shall recalculate the benefit as soon as may be practicable after the mistake is discovered.
>
>    \*\*\*
>
> If the benefit was mistakenly set too high, [SURS] may recover the amount overpaid from the recipient thereof, plus interest at the effective rate from the date of

overpayment to the date of recovery, either directly or by deducting such amount from the remaining benefits payable to the recipient. However, if (1) the amount of the benefit was mistakenly set too high, and (2) the error was undiscovered for 3 years or longer, and (3) the error was not the result of incorrect information supplied by the affected member or beneficiary, then upon discovery of the mistake the benefit shall be adjusted to the correct level, but the recipient of the benefit need not repay to [SURS] the excess amounts received in error." 40 ILCS 5/15-186.1 (West 2010).

Additionally, the legislature expressly granted municipal police pension boards the power to deduct from future pension or benefit payments "any overpayment, due to fraud, misrepresentation or error." 40 ILCS 5/3-144.2 (West 2010).

¶ 25    While SERS acknowledges the legislature did not grant it the express authority to fix errors in its pension calculations, it urges this court to infer its authority based on the objectives for which SERS was created, its fiduciary duty, and its audit power. We decline to do so.

¶ 26    "The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature." *Alvarez v. Pappas*, 229 Ill. 2d 217, 228, 890 N.E.2d 434, 441 (2008). The legislature clearly knows how to grant a pension board the authority to fix errors it makes in pension calculations outside of the 35-day period of review provided by the Administrative Review Law, as it has done so for SURS and municipal police pension boards. Further, both SERS and SURS were created for the same purpose–to provide retirement annuities and benefits to their employees. Likewise, both SERS and SURS have fiduciary duties and the power to audit (compare 40 ILCS 5/15-174 (West 2010), with 40 ILCS 5/14-135.06 (West 2010)). Despite the similarities between these pension boards, the legislature decided to include an express provision granting SURS the authority to correct its mistakes at any time, but did not do so for SERS. Had the legislature intended SERS to have this authority, surely it would have stated as much.

¶ 27    In addition, the Board argues it is contrary to public policy to prevent it from correcting what it asserts are "computational errors." See generally *Yaccino v. State Farm Mutual Automobile Insurance Co.*, 346 Ill. App. 3d 431, 439, 804 N.E.2d 677, 684 (2004) (noting a "public policy interest in protecting public funds"); *Aetna Casualty & Surety Co. of Illinois v. James J. Benes & Associates, Inc.*, 229 Ill. App. 3d 413, 421, 593 N.E.2d 1087, 1092 (1992) (noting a "public policy interest of protecting public funds and property and preventing the diversion of tax monies from their intended purpose of paying damage claims"). We disagree.

¶ 28    The Board is not estopped from fixing errors it makes in its calculation of pension benefits; it must simply correct those mistakes within the 35-day period provided for by the Administrative Review Law. We note the Board found an error in the calculation of Sharp's pension benefits by May 19, 2011, 21 days after its initial April 29, 2011, approval of his pension benefits. The Board notified Sharp of the error, collected an overpayment, and reduced Sharp's monthly pension. The Board should have noticed any error in the rate used to compute his pension at that time, but it did not. Absent statutory authority, the Board may not correct the error now. Perhaps the Board should have the authority to do so. This is a matter for the legislature. It is not appropriate for the court to imply such authority.

## C. Whether SERS Actions Violated the Illinois Administrative Procedure Act

¶ 30 Sharp also asserts even if the Board has implied authority to reconsider its final order beyond the 35-day period allowed by the Administrative Review Law, the Board violated the Illinois Administrative Procedure Act by (1) applying a policy not promulgated in its adopted rules and (2) adopting a rule (80 Ill. Adm. Code 1540.270(d)(10)(B) (2008)) in direct conflict with the Illinois Administrative Procedure Act (5 ILCS 100/10-35(b) (West 2010)), *i.e.*, requiring a bystander's report of its hearings in lieu of a verbatim transcript. Because we find the Board does not have authority to fix errors it makes in the formula used in its pension calculations outside the 35-day period of review provided by the Administrative Review Law, we need not determine whether SERS's rule requiring a bystander's report of its hearings violates the Illinois Administrative Procedure Act (5 ILCS 100/1-1 to 15-10 (West 2010)).

## D. Whether the Board Is Estopped From Reducing Sharp's Monthly Pension

¶ 32 Because we find the Board lacks authority to reduce his monthly pension benefit, we need not address Sharp's argument the doctrine of equitable estoppel would prevent the Board from doing so. However, we note based on what the Board considered to be its implied authority to correct errors in the calculation of pension benefits it approved nearly nine months prior, it notified Sharp it would be reducing his monthly benefit from $3,148.85 to $2,496.16, and would need to collect an overpayment of $5,874.21. The record is devoid of whether the $2,496.16 is the amount SERS would pay, or the combined amount of SERS and IMRF.

¶ 33 Based on the Board's letter and the overpayment of $5,874.21 it is trying to collect, it appears the $2,496.16 would be the total amount from both SERS and IMRF ($3,148.85 minus $2,496.16 times 9 equals $5,874.21). However, prior to retiring, Sharp obtained the following two pension estimates from SERS: (1) $2,897.86 assuming an August 1, 2010, retirement ($2,371.57 from SERS and $526.19 from IMRF) and (2) $2,970.53 assuming a January 1, 2011, retirement ($2,439.72 from SERS and $530.81 from IMRF). Sharp retired March 21, 2011. Based on these prior two estimates, it appears the $2,496.16 is the monthly pension amount from SERS only, as it is not likely a retiree's pension would decrease $652.69 by retiring nearly three months after the date considered by the last estimate.

## E. Attorney Fees and Costs

¶ 35 Last, Sharp requests a remand for a hearing on an award of attorney fees and costs. His claim for attorney fees, however, is couched in his argument SERS violated the Illinois Administrative Procedure Act by (1) following a policy for which it did not promulgate a rule or (2) adopting a rule, *i.e.*, the use of a bystander's report, in direct conflict with the Illinois Administrative Procedure Act. Because this court declines to reach either argument, we cannot reach Sharp's argument for attorney fees and costs.

## III. CONCLUSION

¶ 37        For the reasons stated, we affirm the circuit court's judgment reversing the Board's order.

¶ 38        Affirmed.